# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PRMCONNECT, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-417 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JEAN DRUMM and ) | |
| DRUMM AND COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND OPINION ORDER

Before the Court is Defendants' consolidated motion for summary judgment [13]. For the reasons set forth below, Defendants' motion [13] is denied. This case is set for further status on June 1, 2016, at 9:00 a.m.

### I.     Background

Defendant Jean Drumm is a licensed Certified Public Accountant and a principal of Defendant Drumm and Company, an Indiana-based accounting firm. In 2007, Plaintiff PRMConnect, Inc. (then known as Hills-Kahn, Inc.), a software development company incorporated in Illinois and based in Las Vegas, Nevada, hired Defendants to provide "accounting, consulting, and payroll services." [See 13-4, at 1.] The parties maintained this relationship until either March 15 or April 1, 2014 (they disagree on the exact date), when Plaintiff terminated Defendants and began using another accounting firm.

Although Defendants were hired to provide "accounting, consulting, and payroll services," at times their scope of work expanded beyond these three categories. For example, at one point Defendants were tasked with establishing Plaintiff's health insurance program. But the parties dispute the extent to which Defendants responsibilities extended beyond these three

categories, particularly with respect to insurance matters. Plaintiff claims that Defendants were responsible for insurance for Plaintiff from 2008 to 2014, and that Defendant Jean Drumm had the ultimate role in managing, procuring, and renewing insurance policies. Defendants admit that, at times, they assisted with insurance-related tasks (*e.g.*, acting as a liaison between PRMConnect, Inc. and its insurance representatives), but they claim that other PRMConnect, Inc. employees did so as well, and Defendants deny that they were ever put in charge of the company's insurance matters.

In September 2012, Plaintiff relocated its office from 7313 Mount Kearsage in Las Vegas to 7495 W. Azure Drive, also in Las Vegas. In February 2013, Plaintiff created a "task list" for Defendants (the parties disagree as to the formality of this list, and whether it was a "final" list or just a "starting point"), instructing them to, among other things, "[m]anage and renew any insurance forms and requirements for business, key man, life, liability, and auto policies." [22, at 5–6.] Regardless of whose responsibility it was, nobody updated Plaintiff's property insurance policy to reflect the change in address.

On April 8, 2014—either one or three weeks after Plaintiff terminated Defendants, depending on whose date of termination you use—thieves broke into Plaintiffs' Azure Drive office and stole computer equipment and accessories. Plaintiff submitted a claim to Travelers Insurance (its property insurer), which denied the claim because the policy was never updated to cover Plaintiff's Azure Drive office. On January 15, 2015, Plaintiff sued Defendants, arguing that they were negligent in failing to update the address on the insurance policy. Now before the Court is Defendants' motion for summary judgment [13] on Plaintiff's negligence claims.

## II. Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chicago*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of

the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

The parties agree that Illinois substantive law applies in this diversity suit, in which this Court is tasked with using its "best judgment to estimate how the [Illinois] Supreme Court would rule" on the disputed issues of state law. *Valerio v. Home Ins. Co.*, 80 F.3d 226, 228 (7th Cir. 1996). To the extent that the Illinois Supreme Court has not spoken directly about an issue, the Court may give "proper regard" to the state's lower courts. *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). To succeed on a negligence claim under Illinois law, a plaintiff must prove "that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999).

### A. Proximate Cause

Defendants' primary argument is that they were not the proximate cause of Plaintiff's injury "because the independent, unforeseeable, superseding criminal act by the thieves broke the causal chain between [Defendants'] alleged negligence and [Plaintiff's] injury." [13-1, at 5.] The Court disagrees.

Proximate cause is composed of two distinct requirements: cause in fact and legal cause. *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992); *Fitzgibbon v. Nat'l Broad. Co.*, 732 N.E.2d 64, 65 (Ill. App. Ct. 2000). To establish cause in fact, a plaintiff must show that the defendant's "conduct was a material element and a substantial factor in bringing about the injury." *Lee*, 605 N.E.2d at 502. "A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred."

4

*First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999). Legal cause, by contrast, "is essentially a question of foreseeability," where courts must determine "whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.*

Subsumed within the legal cause analysis is the concept of intervening cause, which asks whether an intervening act by a third party caused the injury despite a prior contributing action by a defendant. This inquiry is encompassed by the "foreseeability" analysis of whether legal cause exists. See *Jinkins v. Evangelical Hosps. Corp.*, 783 N.E.2d 123, 127 (Ill. App. Ct. 2002) ("Where there is an intervening act by a third person, the test we apply is whether the first wrongdoer reasonably might have anticipated the intervening cause as a natural and probable result of the first party's own negligence."). If the intervening act was not foreseeable, it breaks the causal chain such that the first wrongdoer is not considered the proximate cause of the injury. See, *e.g.*, *Billman v. Frenzel Const. Co.*, 635 N.E.2d 435, 439 (Ill. App. Ct. 1993) ("[T]his court has affirmed summary judgments granted on the ground that negligent driving broke the chain of causation." (citations omitted)).

Defendants, citing mostly to inapposite auto-accident cases, argue that the thieves who stole the equipment from Plaintiff's building proximately caused Plaintiff's injury because their actions were unforeseeable and thus superseded any negligent acts by Defendants. But this case is more akin to insurance-broker cases,[1] in which courts recognize that the very purpose of obtaining insurance is to protect against *foreseeable* losses, and thus the relevant inquiry for

---

[1] "'Insurance broker' is defined as '[a] person who, for compensation, brings about or negotiates contracts of insurance as an agent for someone else, but not as an officer, salaried employee, or licensed agent of an insurance company.'" *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 753 (Ill. 2015) (quoting Black's Law Dictionary 220 (9th ed. 2009)); see *id.* at 752–53 ("A broker is an individual who procures insurance and acts as a middleman between the insured and the insurer, who solicits insurance business from the public under no employment from any special company and who, having secured an order, places the insurance with the company selected by the insured, or in the absence of any selection by the insured, with a company he selects himself." (citations omitted)).

proximate cause purposes is whether a policy was available that would have covered the loss during the relevant policy period. If so, the failure to procure the policy is considered the proximate cause of the uninsured loss. See *Brothers Future Holdings, LLC v. Indiana Ins. Co.*, 2015 WL 2070066, at *9–11 (Ill. App. Ct. May 1, 2015); *Garrick v. Mesirow Fin. Holdings, Inc.*, 994 N.E.2d 986, 993–94 (Ill. App. Ct. 2013); *Green v. Kubota Tractor Corp.*, 2012 WL 1416465, at *6 (N.D. Ill. Apr. 24, 2012). Here, the parties appear to agree that a policy was available that would have covered the loss during the relevant policy period—namely, the existing policy that Plaintiff purportedly instructed Defendants to update to reflect Plaintiff's change of address. This implies that the loss in question *was* foreseeable, and thus the act of the third-party thieves *did not* break the causal chain, thus rendering Defendants' motion for summary judgment on this issue unavailing. At a minimum, Defendants have failed to show, as a matter of law, that the third-party actions of the equipment thieves was an intervening cause of Plaintiff's injury, and thus Defendants' motion must be denied.

**B.     Duty**

Defendants argue that regardless of whether Plaintiff tasked Defendants with renewing the insurance policy in question, Defendant Jean Drumm, as an employee of Defendant Drumm and Company, only owed a duty to her employer, not to the third-party Plaintiff.[2] The Court disagrees.

Accountants owe a duty of care to their clients, and accountants who are negligent in performing accounting services can be held individually liable to their clients for their negligent acts. See, *e.g.*, *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514–15 (Ill. 1994) ("Accountants have long been held to be members of a skilled

---

[2] Whether a duty existed is a question of law to be decided by the court. See *Kelley v. Carbone*, 837 N.E.2d 438, 441 (Ill. App. Ct. 2005).

profession, and liable for their negligent failure to observe reasonable professional competence." (quotation omitted)). Although an accountant's firm also may owe duties (contractual, statutory, or otherwise) to its clients that can subject it to liability, this does not override an individual accountant's duties to his or her client. Similarly, while an accountant may owe certain duties to his or her accounting firm, those duties do not displace the accountant's duties to his or her client.

Defendants are correct that, generally speaking, an accountant does not owe a duty to a "third party." But what both parties fail to recognize is that PRMConnect, Inc. was Defendant Drumm's *client*, not a third party, and accountants *do* owe duties to their clients. See, *e.g.*, *Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 723 (Ill. App. Ct. 2004) ("The general rule in Illinois is that an attorney [or an accountant] owes a duty of care only to his client and not to third parties. * * * An attorney or an accountant owes a duty to a third party only where hired by the client specifically for the purpose of benefitting that third party." (citations omitted)). This distinction is fatal to Defendants' argument.

Further, even if Defendant Drumm was acting as an insurance broker at the relevant time, as opposed to an accountant—a distinction that the parties dispute but do not address substantively—insurance brokers also owe a duty of care to their clients, making Defendants' argument unavailing in that context as well. See, *e.g.*, 735 ILCS 5/2-2201(a); *Country Mut. Ins. Co. v. Carr*, 852 N.E.2d 907, 915–16 (Ill. App. Ct. 2006), *vacated on other grounds*, *In re Country Mut. Ins. Co.*, 889 N.E.2d 209 (Ill. 2007); *Brothers Future Holdings, LLC v. Indiana Ins. Co.*, 2015 WL 2070066, at *9–10 (Ill. App. Ct. May 1, 2015) ("[W]hile Illinois law does place a burden on the insured to know its needs for coverage and the contents of its policies, this does not absolve the broker, who has been retained and compensated for his or her particular

7

expertise in coverage, from the duty to competently carry out the explicit requests of the insured." (internal citation omitted)); *Office Furnishings, Ltd. v. A.F. Crissie & Co., Ltd.*, 44 N.E.3d 562, 567–68 (Ill. App. Ct. 2015). Defendant Drumm is not entitled to summary judgment on this basis either.

### C. Economic Losses

Defendant Drumm also claims that an accountant can only be held liable to a third party if "physical harm results,"[3] and argues that because Plaintiff only suffered a purely *economic* loss, Plaintiff's negligence claim against her must fail. Setting aside any discussion of Defendant's statement regarding accountant liability to third parties, this argument fails for the same reason as Defendant Drumm's preceding argument: PRMConnect, Inc. was Defendant Drumm's *client*, not a third party.

In her reply brief, Defendant Drumm shifts course and argues that the "economic loss" doctrine—known as the *Moorman* doctrine in Illinois—bars recovery in this case. However, "it is well-settled that arguments first made in the reply brief are waived." *Billhartz v. C.I.R.*, 794 F.3d 794, 801 n.4 (7th Cir. 2015) (quoting *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007)).

Regardless, even if the Court were to construe Defendant's argument in her reply brief as a "better developed" version of what appeared in her opening brief,[4] Defendant's argument is still without merit. The economic loss doctrine "bars recovery in tort for purely economic losses

---

[3] Defendant relies on the Restatement (Second) of Agency § 352, which says that "[a]n agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things."

[4] "[W]hile arguments made for the first time in [a] reply brief are generally treated as waived, it does not follow that arguments that are better developed in [a] reply brief are waived[.]" *Lara v. Lynch*, 789 F.3d 800, 805 (7th Cir. 2015) (citing *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.2d 818, 837 & n.20 (7th Cir. 2011)).

arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012); see also *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982). The doctrine seeks to prevent disgruntled buyers from recovering more than what they would in a breach of contract action. *Id.*; see also *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) ("Contract law provides the proper remedy for disappointed commercial expectations."); *Congregation of the Passion*, 636 N.E.2d at 513 ("Contract law serves a vital commercial function by providing sellers and buyers with the ability to define the terms of their agreements with certainty prior to a transaction. Where the duty of a seller has traditionally been defined by contract, therefore, *Moorman* dictates that the theory of recovery should be limited to contract although recovery in tort would be available under traditional tort theories."). Thus, "[t]o recover in tort under the economic loss doctrine, a party must show harm above and beyond a party's contractual or commercial expectations." *Am. United Logistics*, 319 F.3d at 926; *Wigod*, 673 F.3d at 567 ("There are a number of exceptions to the *Moorman* doctrine, each rooted in the general rule that '[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.'" (quoting *Congregation of the Passion*, 636 N.E.2d at 514)).

Although the doctrine emerged from cases involving the sale of goods (*e.g.*, the plaintiff in *Moorman* was a disgruntled purchaser of a grain storage tank), it soon evolved into the service industry, where Illinois courts have applied the doctrine to claims stemming from real estate transactions, electrical work, architectural services, etc., based on the common thread of a contractually-delineated relationship:

> A provider of services and his client have an important interest in being able to establish the terms of their relationship prior to entering into a final agreement. The policy interest supporting the ability to comprehensively define a relationship in a service contract parallels the policy interest supporting the ability to

9

> comprehensively define a relationship in a contract for the sale of goods. It is appropriate, therefore, that *Moorman* should apply to the service industry. Just as a seller's duties are defined by his contract with a buyer, the duties of a provider of services may be defined by the contract he enters into with his client. When this is the case, the economic loss doctrine applies to prevent the recovery of purely economic loss in tort.

*Congregation of the Passion*, 636 N.E.2d at 514. But in doing so, the Illinois Supreme Court clarified that "the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Id.* ("The underlying issue is whether the duty an accountant owes to his client is defined by his contractual obligations, or is extracontractual."); *Wigod*, 673 F.3d at 567 ("To determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract.").

Applying those principles to the accounting industry, the Illinois Supreme Court concluded that an accountant's "knowledge and expertise cannot be memorialized in contract terms, but is expected independent of the accountant's contractual obligations," analogizing the accountant–client relationship to the familiar attorney–client relationship. *Congregation of the Passion*, 636 N.E.2d at 515. The court ultimately concluded that an accountant's "duty to observe reasonable professional competence exists independently of any contract," such that "[t]he economic loss doctrine does not bar recovery in tort for the breach of a duty that exists independently of a contract." *Id.* Similarly, to the extent that Defendant Drumm was acting as an insurance broker at the relevant time, Illinois courts have concluded that the *Moorman* doctrine does not apply to insurance brokers, either. See, *e.g.*, *Carr*, 852 N.E.2d at 915–16 (Ill. App. Ct. 2006) (*Moorman* doctrine did not apply to insurance agent based on the agent's extra-contractual

duties owed to his client pursuant to 735 ILCS 5/2–2201(a)); *Kanter v. Deitelbaum*, 648 N.E.2d 1137, 1140 (Ill. App. Ct. 1995) (rejecting the argument the *Moorman* doctrine barred a claim against an insurance broker because the broker owed a fiduciary duty to the insured that existed outside of the contract); *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 993 (N.D. Ill. 2010) ("Illinois courts have held that the *Moorman* doctrine may bar malpractice claims of negligence against engineers and architects (who supply products such as drawings and plans), but not claims against attorneys, accountants, insurance brokers, investment consultants, and environmental consultants (who supply information such as advice and counseling)."); *Hartford Fire Ins. Co. v. Henry Bros. Constr. Mgmt. Servs., LLC*, 877 F. Supp. 2d 614, 619–20 (N.D. Ill. 2012) (explaining the continuum of enterprises, with pure information providers at one end and tangible good providers at the other, and situating accountants and insurance brokers on the end of the spectrum where tort claims are not barred by the *Moorman* doctrine (citing *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 296–97 (Ill. App. Ct. 1999))).

Accordingly, regardless of whether Defendant Drumm is considered an accountant or an insurance broker, she still owed a duty to her client that existed outside of any contractual duty, and thus Plaintiff's negligence claim against Defendant Drumm is not barred by the *Moorman* doctrine.

   **D.**  **Termination of Employment Relationship**

Defendants argue that even if they owed Plaintiff a duty relating to the renewal of its property insurance, that duty expired when Plaintiff terminated Defendants. And because the theft of Plaintiff's property occurred after that termination, Defendants argue that they cannot be held liable for that injury. The Court disagrees. The relevant question is whether Defendants breached their duty of care while that duty still existed. While the *injury* in question occurred

after Defendants' termination, the alleged *breach(es)* occurred while Defendants were still working for Plaintiff. The fact that Defendants' duties towards Plaintiff ended along with the scope of their employment is irrelevant for determining whether Defendants breached their duties during their term of employment. Accountants and/or insurance brokers are not off the hook for negligent acts that occur during their term of employment simply because the injury does not manifest until after their employment has ended.

Defendants' sole authority for this argument, *O'Rourke v. McIlvaine*, 19 N.E.3d 714 (Ill. App. Ct. 2014), is easily distinguishable. In that case, a construction company performed a job at a residential home, and then several months later, long after the job was completed, one of the workers broke into the home and injured the plaintiff. Although an employer owes a duty to exercise reasonable care to control its employees, the court determined that the construction company was not liable in this instance because the employer's duty ended once the job was completed. *Id.* at 722. Of the many differences between that case and this one, the key distinction is that the alleged breach of the duty occurred after the duty expired—*i.e.*, an employer does not have a duty to control its employees once the term of employment has ended. But here, Defendants (allegedly) breached their duty of care while that duty was still in effect. Thus, Defendants are not entitled to summary judgment on this basis either.

## IV. Conclusion

For the foregoing reasons, Defendants' consolidated motion for summary judgment [13] is denied. This case is set for further status on June 1, 2016, at 9:00 a.m.

Dated: May 26, 2016

_____
Robert M. Dow, Jr.
United States District Judge