# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PRMCONNECT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-417 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JEAN DRUMM and ) | |
| DRUMM AND COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction [24]. For the reasons set forth below, Defendants' motion [24] is denied. This case is set for further status on December 20, 2016, at 9:30 a.m. to discuss pre-trial scheduling and the possibility of settlement.

## I.  Background

This case involves an alleged negligent failure to procure adequate business insurance. In 2007, Plaintiff PRMConnect, Inc.—a software development company incorporated in Illinois and based in Las Vegas, Nevada—hired Defendants Jean Drumm and Drumm and Company (an Indiana-based accounting firm) to provide "accounting, consulting, and payroll services." Plaintiff alleges that Defendant Drumm "undertook the responsibility to procure and maintain property insurance coverage" on Plaintiff's behalf from 2008 through 2014. [1, ¶ 9; 27, at 1–2.] In September 2012, Plaintiff relocated one of its Las Vegas offices from 7313 Mount Kearsarge to 7495 W. Azure Drive. No one updated Plaintiff's property insurance policy to reflect the change in address. On April 8, 2014, thieves broke into the Azure Drive office and stole computer equipment and accessories. Plaintiff submitted a claim to its property insurer

(Travelers Insurance), which denied the claim because the policy was not updated to cover the Azure Drive location.

On January 15, 2015, Plaintiff sued Defendants for negligence, invoking this Court's diversity jurisdiction. [1, ¶ 4.] On October 31, 2015, Defendants filed a motion for summary judgment [12], which the Court denied on May 26, 2016 [27]. Just before the Court issued its summary judgment order, Defendants filed a motion to dismiss for lack of subject matter jurisdiction [24]. Specifically, Defendants argue that Plaintiff cannot satisfy the $75,000 amount in controversy requirement. At the Court's request, the parties submitted supplemental briefing on the proper measure of damages for Plaintiff's claims under Illinois law [see 35, 36, 37, 38].

## II. Legal Standard

A Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion seeks dismissal of an action for lack of subject matter jurisdiction. Rule 12(b)(1) motions "are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). The Court accepts as true the plaintiff's well-pleaded allegations and draws all reasonable inferences in its favor. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Where the defendant raises a factual challenge to jurisdiction, however, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Id.* (citation omitted); accord *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (describing the difference between facial and factual challenges to jurisdiction). In such instances, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex*, 572 F.3d at 444 (citation omitted). A plaintiff facing a Rule 12(b)(1) motion bears the burden of establishing the jurisdictional requirements. *Burwell,* 770 F.3d. at 588–89.

**III.   Analysis**

The sole question presented by Defendants' motion is whether Plaintiff can satisfy the amount in controversy requirement for purposes of federal diversity jurisdiction. Federal courts have jurisdiction over civil suits between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). If the material factual allegations regarding amount in controversy are contested, the proponent of federal diversity jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). "Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Id.* (citation omitted). "Whether damages will exceed $75,000 is not a fact but a prediction." *Id.* at 541. "Only if it is 'legally certain' that the recovery (from plaintiff's perspective) * * * will be less than the jurisdictional floor may the case be dismissed." *Id.* at 543.

There are several ways in which the proponent of federal jurisdiction may establish the amount in controversy, including "contentions interrogatories or admissions in state court," "calculation from the complaint's allegations," "reference to the plaintiff's informal estimates or settlement demands," or "introducing evidence, in the form of affidavits * * * about how much it would cost to satisfy the plaintiff's demands." *Meridian*, 441 F.3d at 541–42. This "list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint," such as "what a judgment would be worth to the plaintiff." *Id.* at 542. Once this estimate supported by "competent" proof is made, "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Id.*

Although Plaintiff's negligence claims sound in tort, both parties agree that the proper measure of damages is the insurance policy that Plaintiff allegedly sought but Defendants failed to procure. [35, at 2; 36, at 1]; accord *Bros. Future Holdings, LLC v. Indiana Ins. Co.*, 2015 IL App (1st) 141581, ¶ 49 ("The measure of such damages is determined based upon the terms of the policy which was sought by the insured but which the broker failed to procure"); *Lake Cty. Grading Co. of Libertyville v. Great Lakes Agency, Inc.*, 226 Ill. App. 3d 697, 701 (1992); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 266–67 (7th Cir. 1986); *Wheaton Nat. Bank v. Dudek*, 59 Ill. App. 3d 970, 973 (1978). As a result, whether the amount in controversy is satisfied depends on Plaintiff showing that its losses exceed $75,000 *and* that those particular losses would have been covered by the insurance policy that it sought but did not receive.

Plaintiff identifies two categories of damages that it claims clear the $75,000 hurdle. First, it claims that the "replacement cost of the stolen business personal property" from the Azure Drive location totals $113,005. [36, at 4.] To support this claim, Plaintiff attaches an itemized inventory of the lost equipment with prices that Plaintiff produced in response to one of Defendants' document requests.[1] [See 29-3.] Plaintiff also cites deposition testimony from a partner at PRMConnect who stated that the stolen equipment was "worth" "in excess of a hundred thousand dollars," but refused to elaborate further. [29-1, at 83:8–84:14.] Second, Plaintiff claims that it suffered $98,000 in "lost revenue * * * due to cancelation of SAP business

---

[1] The Court notes that Plaintiff's response to Defendants' document request characterizes this itemized list as representing the "original costs" of the stolen equipment. [29-2, ¶ 10.] In other words, this list does not necessarily represent "replacement costs." In fact, documents with a different Bates range, which Plaintiff did not submit to the Court, purportedly represent the receipts and invoices for all of the equipment "replaced" from the burglary. *Id.* ¶¶ 11–12. In its order for supplemental briefing, the Court directly asked whether the itemized list represents replacement costs. [34, at 2.] Plaintiff's response is somewhat equivocal, stating that this list "represents the replacement cost" as it "is a copy of the original costs." [36, at 4.] The Court interprets Plaintiff's response to mean that there is no difference between the original cost and the post-conversion replacement cost of the stolen equipment.

because of the lost and stolen equipment." [29, at 3.] In support, Plaintiff cites its response to one of Defendants' discovery requests, which makes the same assertion.[2] [29-2, ¶ 14.]

Defendants challenge each category of damages. With respect to the "replacement cost," Defendants argue that no contemporaneous documents show losses *exceeding* $75,000, as required by 28 U.S.C. § 1332(a). Defendants point to (i) an April 8, 2014 Property Loss Notice that refers to a telephone call where Plaintiff describes the stolen equipment as valued at "approximately $75,000" [24, Ex. D]; (ii) a letter from Plaintiff's insurance broker to Plaintiff stating that the equipment is "valued at $75,000" [24, Ex. E]; (iii) a May 23, 2016 affidavit from Defendant Jean Drumm stating that he spoke with Plaintiff's corporate counsel in "late April or early May of 2014" and Plaintiff's counsel stated "approximately $30,000 in equipment was stolen" [24, Ex. F, ¶¶ 4–5]; and (iv) Plaintiff's itemized tax returns from tax year 2014, which claim a $71,002 cost basis for the stolen equipment [24, Exs. A & B; 24-1, at 6]. With respect to the "lost revenue," Defendants argue that Plaintiff's assertion of $98,000 is unsubstantiated, was not declared on Plaintiff's tax returns, and was not reported with its insurance claim to Travelers.

While these arguments may ultimately undermine Plaintiff's ability to recover damages exceeding $75,000, they do not show that Plaintiff is "legally certain" not to recover such damages. First, regarding the replacement costs, both the Property Loss Notice and the insurance broker letter are rough approximations in the ballpark of the jurisdictional threshold. [24, Exs. D & E.] Neither generalization purports to be a definitive estimate of the stolen property's replacement cost or a stipulation that damages did not exceed $75,000. Similarly, Defendant Drumm's recollection of a two-year-old telephone conversation is not dispositive.

---

[2] Defendants also submitted a Local Rule 56.1 statement that "the amount in controversy exceeds $75,000.00," which Plaintiff admitted. [21, ¶ 4.] Even if the parties (at one time) agreed that the jurisdictional amount was satisfied, the Court has an independent duty to ensure that the amount in controversy is satisfied. *Smith v. Am. Gen. Life and Accident Ins. Co., Inc.*, 337 F.3d 888, 893 (7th Cir. 2003).

Plaintiff offers sworn testimony from one of its own principals that losses exceeded $100,000, and this conflicting damages testimony shows that "an award over the threshold cannot be ruled out." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006). Likewise, Plaintiff's tax returns do not estop it from arguing that replacement costs are more accurately represented by the itemized inventory produced in discovery [see 29-3]. Plaintiff may have chosen not to declare all of its losses on its tax return, and Defendants identify no authority suggesting that losses declared on tax returns limit damages in negligence cases like this one. Defendants do not argue, for example, that the itemized inventory erroneously includes property that was not stolen. Rather, Defendants argue that the "best evidence of fair market value" is the tax returns. That is not the same as arguing that Plaintiff is "legally certain" to recover $75,000 or less if it prevails. Ultimately, these arguments speak to uncertainty about whether Plaintiff's damages will exceed the jurisdictional threshold if it prevails. See *Reason v. Wal-Mart Stores, Inc.*, 2008 WL 410227, at *2 (C.D. Ill. Feb. 12, 2008) ("Uncertainty differs from impossibility"). That "does not justify dismissal." *Meridian*, 441 F.3d at 543. Plaintiff has satisfied its burden to show more than $75,000 in equipment replacement costs are in controversy.

Second, regarding "lost revenue," Plaintiff's alleged $98,000 in lost revenue also satisfies the jurisdictional threshold. Defendants' request for production sought "documents evidencing [that] the value of this lawsuit exceeds seventy-five thousand dollars." [29-2, ¶ 14.] Plaintiff's response—signed by counsel—is equivalent to an interrogatory response about its losses, which is one way of showing the amount in controversy. See *Meridian*, 441 F.3d at 541; see also Fed. R. Civ. P. 11(b)(3). Again, Plaintiff's failure to report this loss on its 2014 taxes does not legally foreclose recovery for this loss. Furthermore, Plaintiff's insurance claim was denied on April 17, 2014—less than ten days after the burglary. [1, ¶ 29.] It is hardly surprising that $98,000 in lost

revenue does not appear on this claim, since it is highly unlikely that these losses would have been realized in such a short window (and, of course, there would have been no reason for Plaintiff to report lost revenue to Travelers in a future claim once it became clear on April 17 that all claims related to the theft would be denied). In short, nothing before the Court suggests that it would be "legally impossible" for Plaintiff to recover more than $75,000 in lost revenue. *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).

The next question is whether the insurance policy that Plaintiff allegedly sought would have covered the property and revenue losses. The Court starts with whether the property losses would have been covered. The insurance policy in effect on April 8, 2014 includes a section titled, "Loss Payment – Building and Personal Property," which provides that "[i]n the event of [a covered] loss * * * at our option, we will either: (1) [p]ay the value of lost or damaged property; (2) [p]ay the cost of repairing or replacing the lost or damaged property." [35-1, at RAGLAND001009.] The "value" is determined "[a]t replacement cost (without deduction for depreciation)," but is subject to various limitations. *Id.* at RAGLAND001010. The limitation in subsection (c) provides that the insurer "will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs (i), (ii) or (iii) * * *:"

> (i) The Limit of Insurance applicable to the lost or damaged property;
> (ii) The cost to replace the lost or damaged property with other property:
>     a) Of comparable material and quality; and
>     b) Used for the same purpose; or
> (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property.

*Id.*

The Limit of Insurance that applied to personal property losses at the Mount Kearsarge location on April 8, 2014 (and thus the limits that would have applied to the Azure Drive location had the address been updated) is $24,272. *Id.* at RAGLAND000974. Based on this

policy limit, Defendants argue that it is legally certain that Plaintiff cannot satisfy the amount in controversy: if Defendants had updated the insurance policy to cover the Azure Drive location, then the maximum payout for stolen equipment would have been $24,272 (assuming no other deductions apply)—far below of the jurisdictional minimum.

Defendants overlook the fact that Plaintiff's allegations go beyond the failure to update an address. According to Plaintiff, had the correct insurance policy been in effect on April 8, 2014, the policy would have included an "adequate" limit for lost personal property. Specifically, Plaintiff alleges that Defendants "never informed [its insurance broker or insurer] of the need to increase the limits of coverage for [Plaintiff's] office or data center so as to ensure adequate limits of insurance were in place to cover all of [Plaintiff's] business property." [1, ¶ 24.] The complaint further alleges that both Defendants were negligent by "failing to advise [the insurance broker or insurer] of the need to increase the limits of coverage," "failing to * * * request additional coverages," and "failing to adequately and clearly document a response to [the insurance broker] so that * * * the appropriate amount of insurance was procured." *Id.* ¶¶ 33, 42. The meaning of "adequate limits of insurance" will certainly be subject to dispute, but this phrase does not establish a hard $24,272 ceiling on Plaintiff's ability to recover for lost property at this stage. Therefore, it is not legally certain that the insurance policy that Plaintiff alleges should have been in effect would have precluded property losses in excess of $75,000.

The same is true with respect to the policy's coverage of lost business. The insurance policy in effect on April 8, 2014 covers the "actual loss for 12 consecutive months" from lost business income. [35-1, at RAGLAND000973.] The specific provision in the policy, titled "Business Income and Extra Expense," defines "business income" as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred." *Id.* at RAGLAND000983.

8

The policy covers "the actual loss of Business Income [Plaintiff] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of * * * property [and] [t]he loss * * * must be caused by or result from a Covered Cause of Loss." *Id.* at RAGLAND000983–84. The business income policy does not cover "[s]uspension, lapse or cancellation of any license, lease or contract" unless "directly caused by the 'suspension' of 'operations,'" in which case "such loss that affects [the] Business Income during the 'period of restoration' and the period of Extended Business Income" are covered. *Id.* at RAGLAND001007. The policy also excludes "[a]ny other consequential loss." *Id.* Neither side identifies any monetary caps that apply to a payout under this provision.

By its terms, this policy could cover Plaintiff's $98,000 in losses due to "the cancellation of SAP business because of the lost and stolen equipment." [29-2, ¶ 14.] This lost business was allegedly "caused by the direct physical loss" of the stolen equipment.[3] Defendant argues that Plaintiff "has not alleged any facts that the 'lost revenue' is not from a cancellation of a contract or other consequential losses, which were specifically excluded from coverage under the insurance policy." [37, at 5.] But that argument misconstrues Plaintiff's allegations and its burden. Plaintiff has alleged that the stolen equipment caused the "cancellation of SAP *business*," not the cancellation of a contract, so Plaintiff's allegation does not directly implicate this exclusion. Likewise, Defendants offer no reason to think that the phrase "other consequential loss" would apply to business income lost based on suspended operations because of stolen equipment, which appears to be the kind of loss directly covered by the policy. Even so, Plaintiff is not required at this stage to disprove application of a potential policy exclusion

---

[3] The Court assumes that Plaintiff uses "revenue" and "income" interchangeably. The policy covers "Net Income," which means net profit or revenue minus expenses. Defendant does not specifically argue that "Net Income" from Plaintiff's alleged business losses would actually be less than $75,000 once expenses are deducted. For purposes of this motion only, Plaintiff's claim that $98,000 in "lost revenue" approximates $98,000 in "Net Income" is unrebutted.

9

absent reason to believe that it is "legally certain" this exclusion controls and forecloses damages above the jurisdictional threshold. Here, the exclusion identified by Defendants does not even preclude coverage of all losses from cancelled contracts. Losses from suspended, lapsed, or cancelled contracts may still be covered if those losses were "directly caused" by suspension of business operations and accrued during certain time periods. *Id.* at RAGLAND001007. Uncertainty about an exclusion's application or the degree to which Plaintiff's damages may be limited by these exclusions is not grounds for dismissal. *Meridian*, 441 F.3d at 543. Plaintiff has alleged business income losses exceeding $75,000, identified policy provisions that could cover these losses, and there is not clear definitive language in the policy that forecloses coverage for these losses. That is sufficient to survive a motion to dismiss.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction [24] is denied. This case is set for further status on December 20, 2016, at 9:30 a.m. to discuss pre-trial scheduling and the possibility of settlement.

Dated: December 5, 2016

_____
Robert M. Dow, Jr.
United States District Judge